1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YUAN ZHANG,

               Plaintiff,

    v.

THE ENERGY AUTHORITY INC,

               Defendant.

CASE NO. 2:22-cv-00694-TL

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

Plaintiff Yuan Zhang brings claims of employment discrimination against her former employer, Defendant The Energy Authority Inc. ("TEA"). This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 50) and Defendant's Motion for Summary Judgment (Dkt. No. 52). Having reviewed the relevant record, including the Parties' briefing on the motions (*see* Dkt. Nos. 50–56, 59–64), the Court GRANTS IN PART and DENIES IN PART the Parties' cross-motions for summary judgment.

# I.   BACKGROUND

The Parties dispute many relevant details, but the facts regarding Ms. Zhang's employment relationship with TEA and the events leading to her claims appear to be generally uncontested. The undisputed facts regarding those events follow.

Ms. Zhang is an Asian woman, specifically a Chinese immigrant, and a mother. TEA is a public utility-owned, nonprofit corporation that operates in energy markets across the United States.

In 2015, Ms. Zhang was hired as a junior analyst for TEA's West Coast analytics team in its office located in Bellevue, Washington. At the time, Ms. Zhang had already attained a master's degree in mathematics. Although the specific nature of her role and what she represented to TEA about her prior work history is in dispute, Ms. Zhang also had some prior relevant experience working for AT&T.

In 2017, Ms. Zhang took on a more senior qualified analyst role, which included increased responsibilities. This was the role Ms. Zhang held when TEA terminated her employment in August 2019.

Josh West, a non-Asian man, was her direct supervisor for the majority of her time at TEA, but he was eventually promoted and replaced by Kevin Galke, who is also a non-Asian man. Both Mr. West and Mr. Galke reported to William Clarke, a non-Asian man; Mr. Clarke reported to Susan Boggs, a non-Asian woman. During Ms. Zhang's tenure, TEA employed other people of Asian descent—two of whom, including another Asian woman and mother, have provided declarations in support of TEA claiming that they never experienced discrimination during their employment with TEA. Dkt. Nos. 53–54.

While Ms. Zhang's overall job performance is highly disputed, Ms. Zhang received formal performance appraisals through TEA's standardized annual review process, as well as

regular feedback—both positive and negative—from her supervisors and coworkers throughout her tenure. Although the Parties dispute the root cause, Ms. Zhang was also involved in at least one major employment incident involving a programming error that resulted in a significant investment loss in early 2018, which instigated ongoing communications among TEA leadership regarding Ms. Zhang's status with the company. No formal disciplinary actions were initiated against Ms. Zhang in response to this incident.

In September 2018, Ms. Zhang announced her pregnancy and intent to eventually take maternity leave. While the timing of when TEA made relevant *decisions* is disputed by the Parties, the undisputed evidence shows that *discussions* regarding reorganization plans occurred as early as August 15, 2018, prior to Ms. Zang's announcement. Dkt. No. 50 at 14. Mr. West informed his direct reports of the reorganization decisions that included a change in responsibilities for Ms. Zhang shortly after her announcement. *See* Dkt. No. 51 at 155. Ms. Zhang felt that the announced change unfairly reduced her responsibilities, but it appears that neither her job title, work location, salary, or available benefits were impacted. Also in this timeframe, Mr. West was replaced by Mr. Galke and TEA hired another analyst, Leilei Xiong, Ph.D., an Asian woman.

Eventually, Ms. Zhang gave birth in March 2019 and returned from maternity leave in May 2019. The Parties dispute whether Ms. Zhang followed necessary procedures and established employment-benefits policies, but there is no dispute that she was allowed to take maternity leave. While she was out on leave, Mr. Galke circulated communications addressing workload issues in light of the many recent changes and, at least in part, due to Ms. Zhang's absence. Mr. Galke and Mr. Clarke also communicated about ongoing workplace concerns regarding Ms. Zhang, including how they would address her absence and the possibility of her not returning from leave. Those communications included discussing other potential changes

involving other team members, such as Ryan Johnson, a non-Asian man who was originally hired as an intern.

The Parties continue to dispute Ms. Zhang's job performance upon her return to work. In July 2019, Ms. Zhang communicated with Mr. Galke and the human resources department that she anticipated potentially needing to take additional leave later in the year, although she did not communicate any specific plans or the specific dates for the anticipated leave. In August 2019, before she took any additional leave, Ms. Zhang's employment was terminated. Although the specifics regarding who replaced Ms. Zhang when she left are in dispute, it appears that Mr. Johnson, no longer an intern, took over at least some of her responsibilities for at least some amount of time immediately after Ms. Zhang was terminated.

Ms. Zhang originally filed her Complaint in King County Superior Court on April 25, 2022. TEA removed the case to federal court on May 23, 2022. The case is properly before this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441. The Parties now cross-move for summary judgment. Dkt. Nos. 50, 52.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The court must draw all justifiable inferences in favor of the non-movant. *Id.* at 255. The court does not make credibility determinations or weigh evidence at this stage. *Munden v.*

*Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[W]here the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied.").

If the non-movant bears the burden of proof at trial, the movant only needs to show an absence of evidence to support the non-movant's case. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once such a showing is made, the burden shifts to the non-movant to show more than the mere existence of a scintilla of evidence in support of its case—the party must show sufficient evidence that a jury could reasonably find for the non-movant. *Id.* (citing *Anderson*, 477 U.S. at 252). Even if the non-movant does not have the burden of proof at trial, it must nonetheless show that a genuine issue of material fact exists by presenting evidence in its favor. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929–30 (9th Cir. 2009) (affirming summary judgment for plaintiff where defendants failed to show significantly probative evidence to dispute plaintiff's evidence). In short, the Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (citing Fed. R. Civ. P. 56(c)).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted). The court rules on each motion "on an individual and separate basis." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998)).

### III.    DISCUSSION

Ms. Zhang asserts 10 separate causes of action[1] under both federal and Washington antidiscrimination laws that can generally be summarized as (1) claims of intentional discrimination based on her race, national origin, and gender, (2) hostile work environment claims, and (3) a Washington Family Leave Act ("WFLA") retaliation claim. *See* Dkt. No. 1-1 ¶¶ 6.1–15.10. In answer to Ms. Zhang's complaint, TEA asserts the following 12 affirmative defenses:

1.  Plaintiff has failed to state a claim upon which relief may be granted.
2.  Plaintiff's claims are barred because all actions taken by Defendant in relating to Plaintiff's employment were taken for lawful, non-discriminatory, and/or other legitimate business reasons.
3.  Plaintiff's claims are barred under the doctrines established under *Fargher-Ellerth*.
4.  Plaintiff's claims are barred under the doctrine of unclean hands.
5.  Plaintiff's damages, which are specifically denied, were caused by her acts and/or omissions and/or others over whom Defendant had no control and not caused by Defendant.
6.  Plaintiff has failed to mitigate her damages
7.  Defendant has acted in good faith at all times material to this lawsuit.
8.  Plaintiff's actions are frivolous and advanced without reasonable basis entitling Defendant to attorney's fees and costs for defending this action.
9.  Plaintiff has failed to timely file claims asserted in this lawsuit.
10.  Plaintiff has asserted claims under a non-existent statute which contains no savings clause and, as such, constitutes a frivolous action for which attorney's fees and costs should be awarded.
11.  Plaintiff's claims are barred by the doctrine of after acquired evidence.

---

[1] Ms. Zhang appears to misnumber her final two causes of action, as she skips from her ninth cause of action to her eleventh cause of action in her Complaint. *See* Dkt. No. 1-1 at 15–16.

> 12. Plaintiff's claims are barred by the doctrines of laches and estoppel.

Dkt. No. 9 at 20–21. In her motion for partial summary judgment, Ms. Zhang asks the Court to find that TEA intentionally discriminated against her on the basis of her gender under the Washington Law Against Discrimination ("WLAD") and Title VII of the Civil Rights Act of 1964 ("Title VII") and seeks to strike all of TEA's affirmative defenses. Dkt. No. 50 at 1, 19–20. In turn, TEA moves to dismiss all 10 of Ms. Zhang's causes of action on summary judgment.[2] Dkt. No. 52 at 1, 16.

## A. Intentional Discrimination Claims

### 1. Legal Standard

Both Title VII and WLAD prohibit employers from discriminating against employees on the basis of certain classifications, including race, national origin, and gender.[3] Courts generally analyze claims of individual employment discrimination[4] under the three-phase burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005); *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wn.2d 516, 526, 404 P.3d 464, 470 (2017). The initial

---

[2] In its reply brief on its motion for summary judgment, TEA also moves to strike certain evidence relied upon by Ms. Zhang in her opposition as inadmissible. Dkt. No. 64 at 14–15. "[T]he nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp.*, 477 U.S. at 324. TEA fails to establish that the challenged evidence could not be offered in an admissible form. Additionally, to the extent its challenge is based on "lack of foundation, improper opinion lack of personal knowledge, and speculation," TEA fails to identify any specific piece of evidence relied upon by Ms. Zhang that should be excluded. Dkt. No. 64 at 15. The Court is capable of applying the appropriate rules and standards regarding evidentiary matters on summary judgment and has not relied on any inappropriate materials in reaching its decisions. TEA's motions to strike are therefore DENIED.

[3] The Court notes that the federal antidiscrimination statutes utilize the term "sex" when describing the covered classifications for prohibited discriminatory acts. *See, e.g.*, 42 U.S.C. § 2000e-2(a). The Court prefers to use the more inclusive and descriptive term "gender," as the law has developed to encompass more than mere biological expressions of sex characteristics and includes the full range of gender-based discriminatory acts. *Cf. Bostock v. Clayton Cnty..*, 590 U.S. 644, 654–60 (2020).

[4] Such claims are alternately described as disparate treatment claims. *See, e.g.*, *Coghlan*, 413 F.3d at 1094.

1   burden rests on the plaintiff to make out a prima facie case of disparate treatment, which raises a

2   rebuttable presumption of discriminatory intent. *Coghlan*, 413 F.3d at 1094*; see also Weil v.*

3   *Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019); *Hittle v. City of Stockton,*

4   *California*, 101 F.4th 1000, 1011–12 (9th Cir. 2024)*.* Once a prima facie case is established, the

5   burden shifts to the defendant to proffer a non-discriminatory reason for the alleged

6   mistreatment. *Weil*, 922 F.3d at 1002; *Hittle*, 101 F.4th at 1012. The burden then shifts back to

7   the plaintiff to establish that the proffered reason is merely pretextual and not worthy of

8   credence, or that discriminatory animus was nonetheless a motivating factor. *McGinest v. GTE*

9   *Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004); *Weil*, 922 F.3d at 1002; *Hittle*, 101 F.4th at

10  1012.

11          At the summary judgment stage, the Court must "zealously guard[] an employee's right to

12  a full trial, since discrimination claims are frequently difficult to prove without a full airing of

13  the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest*, 360 F.3d

14  at 1112.

15          **2.      Prima Facie Case**

16          To establish a prima facie case, a plaintiff can present evidence which directly shows

17  discriminatory animus or may invoke the elements of a prima facie case outlined in *McDonnell*

18  *Douglas* from which a presumption of discriminatory intent arises. *See McGinest*, 360 F.3d at

19  1122 (noting the common confusion regarding the distinction between direct and circumstantial

20  evidence in the *McDonnell Douglas* context); *see also Schnidrig v. Columbia Mach., Inc.*, 80

21  F.3d 1406, 1409 (9th Cir. 1996); *Hittle*, 101 F.4th at 1012.

22          **a.      *Race/National Origin Discrimination***

23          TEA argues that Ms. Zhang cannot establish a prima facie case of race/national origin

24  discrimination as a matter of law. Dkt. No. 52 at 18–22. Ms. Zhang does not affirmatively cross-

move for summary judgment on this claim. Instead, Ms. Zhang argues in opposition that disputes of fact prohibit TEA's summary judgment motion. Dkt. No. 61 at 23–25.

Here, Ms. Zhang relies only on the *McDonnell Douglas* prima facie elements to establish her race/nation origin discrimination claim. Dkt. No. 61 at 23–25. The *McDonnell Douglas* elements require Ms. Zhang to show that she "(1) []is a member of a protected class; (2) []was qualified for h[er] position; (3) []experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). Because she bears the initial burden of proof, to survive summary judgment Ms. Zhang must at a minimum raise a dispute of a material fact as to each element of the prima facie case. *Celotex Corp.*, 477 U.S. at 322.

### (i) Protected Class

Ms. Zhang is a person of Asian descent; more specifically, she is a Chinese immigrant. Dkt. No. 61 at 7. Employment discrimination based on a person's racial identity or national origin is prohibited under both Title VII and WLAD. *See* 42 U.S.C. § 2000e; RCW 49.60.030. TEA does not dispute that Ms. Zhang is a member of a protected racial and national origin class. Dkt. No. 59 at 12.

### (ii) Qualified for Job

TEA argues that Ms. Zhang was never able to satisfactorily perform her job and therefore cannot show that she was sufficiently qualified to establish a prima facie case. Dkt. No. 52 at 21. Specifically, TEA points to documentary and testamentary evidence that Ms. Zhang always struggled in her role, that her supervisors and coworkers were dissatisfied with her overall performance, that she made at least one critical mistake during the relevant timeframe, and that

1  she potentially misrepresented her prior work experience, abilities, and accomplishments. Dkt.

2  No. 52 at 3–14. In response, Ms. Zhang points to the fact that she met the requirements for the

3  role to which she was hired in 2015 and was eventually promoted in 2017 into the role in which

4  she allegedly struggled. Dkt. No. 61 at 7. She also points to documentary evidence that counters

5  the negative comments and suggestions of dissatisfaction presented by TEA, including examples

6  of positive feedback and kudos from supervisors throughout her employment. *Id.* at 7–8. Finally,

7  in response to the allegedly critical mistake, Ms. Zhang notes that she was never formally

8  disciplined for the issue, that there is no evidence of any significant fallout from the incident, that

9  it was caused by a different employee's mistake, and that it occurred due to her being

10 overburdened and not by her lack of qualifications. *Id.* at 8–9; *see also* Dkt. No. 50 at 13–14. The

11 Court therefore finds that Ms. Zhang raises a dispute of material fact as to this element of her

12 prima facie case.

13                              (iii) Adverse Employment Action

14         TEA concedes that Ms. Zhang's employment was terminated, which is a qualifying

15 adverse employment action for purposes of establishing a prima facie case.[5] Dkt. No. 52 at 21.

16                              (iv) Discriminatory Inference

17         In discriminatory discharge cases, this element can generally be established by showing

18 that the plaintiff was replaced by a person outside of the stated protected class. *See Jones v. Los*

19 *Angeles Cmty. Coll. Dist.*, 702 F.2d 203, 205 (9th Cir. 1983); *Calhoun v. Liberty Nw. Ins. Corp.*,

20

21 _____

   [5] The Court notes that the Parties appear to disagree about the specific employment actions at issue in this case from
22 which TEA's potential liability might arise. *Compare* Dkt. No. 50 at 25 (describing the alleged "multiple adverse
   employment actions" as including "remov[ing her] from her projects and plac[ing her] into a 'backfill' position . . . .
23 reciev[ing] unfair performance evaluations in 2017 and 2018, . . . . scrutin[izing] and ignore[ing her leave and
   accommodation requests], and eventually terminat[ing] her job"), *with* Dkt. No. 52 *passim* (focusing entirely on Ms.
   Zhang's claim of discriminatory termination). TEA does not affirmatively challenge any of the other alleged adverse
24 actions. However, given TEA concedes a qualifying adverse employment action, the Court does not need to reach
   the other alleged actions for purposes of this Order.

789 F. Supp. 1540, 1545 (W.D. Wash. 1992). TEA presents evidence that shows that Ms.

Zhang's duties were temporarily reassigned to four individuals, and while one of those

individuals was a white man, one of the four was also an Asian woman. Dkt. No. 64 at 14.

Further, TEA also presents evidence that Ms. Zhang's role was ultimately assumed by a different

Asian woman, Dr. Xiong, who was hired prior to Ms. Zhang's termination. *Id.*; Dkt. No. 52

at 11, 22.

In response, Ms. Zhang does not present any evidence to refute TEA's arguments.

Rather, she asserts that TEA cannot contradict a perceived admission it made in its Answer to

her Complaint. Dkt. No. 61 at 25 (citing Dkt. No. 9 ¶ 4.60). Ms. Zhang's argument fails. While

TEA does appear to have made a qualified admission as alleged, it also categorically denied an

essentially identical allegation in the same document. *Compare* Dkt. No. 9 ¶ 4.60, *with id.* ¶ 13.4.

Taking into account this internal inconsistency, coupled with the fact that the specific

admission—"that as a result of [Ms. Zhang's] failure to perform her work, [TEA] found it

necessary to employee an individual . . . to perform the job requirements . . . [and] meet

expectations. . . . [who] was a Caucasian male" (*id.* ¶ 4.60)—the Court finds that TEA's qualified

admission is not entirely inconsistent with the evidence it has presented to support its summary

judgment motion. Thus, it is not enough for Ms. Zhang to simply rely on this single internally

inconsistent admission to raise a dispute of material fact for trial, especially in light of the

undisputed evidence put forth by TEA.

Although not presented in support of her prima facie case, Ms. Zhang asserts some

additional arguments attempting to raise an inference that Asian employees were generally

treated unfavorably as compared to non-Asian employees. Dkt. No. 61 at 29 (arguing that TEA's

stated reason for her termination was pretext for racial animus). Even taking these arguments

into consideration, they fail because Ms. Zhang does not present any evidence to establish that

1   the alleged unfavorable treatment involved "similarly situated" employees. *Campbell v. Haw.*

2   *Dep't of Educ.*, 892 F.3d 1005, 1016 (9th Cir. 2018) (sustaining finding that plaintiff failed to

3   establish prima facie case of discrimination where "the record is almost completely silent as to

4   whether the [alleged disparate] treatment . . . was shared by others in materially similar

5   circumstances"). Further, the only evidence she offers to support this argument is that she

6   "personally observed a pattern of TEA treating other Asian employees unfairly." Dkt. No. 61

7   at 29. The only record citation she provides is to her own declaration submitted in support of her

8   opposition (*id.*), which is insufficient to raise a dispute of fact, especially since both of the "other

9   Asian employees" she specifically identifies as having been discriminated against have

10   submitted declarations in support of TEA's motion that contradict Ms. Zhang's claims (Dkt.

11   Nos. 53–54). *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two

12   different stories, one of which is blatantly contradicted by the record, . . . a court should not

13   adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see*

14   *also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("The district court can

15   disregard a self-serving declaration that states only conclusions" uncorroborated by other

16   admissible factual evidence). Ms. Zhang fails to raise a dispute of material fact as to this

17   element. TEA therefore has shown that she would be unable to meet her burden of proof to

18   establish a prima facie case of race/national origin discrimination as a matter of law.

19        Consequently, the Court GRANTS TEA's motion for summary judgment and DISMISSES

20   Ms. Zhang's intentional race/national origin discrimination claims.

21           **b.**    ***Gender Discrimination***

22        Under Title VII, as amended by the Pregnancy Discrimination Act, gender discrimination

23   is defined to "include, but [is] not limited to, [discrimination] because of or on the basis of

24   pregnancy, childbirth, or related medical conditions; and women affected by pregnancy,

1   childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Similarly, a form of gender

2   discrimination is recognized under WLAD if an employer "disadvantage[s] women because of

3   pregnancy or childbirth" in the conditions of employment, including "bas[ing] employment

4   decisions or actions on negative assumptions about pregnant women . . . . [failing to] provide a

5   woman a leave of absence for the period of time that she is sick or temporarily disabled because

6   of pregnancy or childbirth. . . . [or not] treat[ing] a woman on pregnancy related leave the same

7   as other employees on leave for sickness or other temporary disabilities." WAC 162-30-020.

8        In her motion, Ms. Zhang argues that she meets her burden for establishing a prima facie

9   case of gender discrimination using either the direct evidence or *McDonnell Douglas* elements.

10  Dkt. No. 50 at 23–26. In its opposition to Ms. Zhang's motion and its cross-motion, TEA argues

11  that Ms. Zhang cannot establish a prima facie case of gender discrimination as a matter of law.

12  Dkt. No. 59 at 12–16; Dkt. No. 52 at 18–22.

13       As to the *McDonnel Douglas* prima facie case elements, the Court notes that the Parties

14  essentially raise the same arguments and point to the same evidence regarding the second

15  element—whether Ms. Zhang can establish that she was qualified for the job—for her

16  race/national origin discrimination and gender discrimination claims. *See* Dkt. No. 50 at 24–25;

17  Dkt. No. 52 at 3–14; 22–23; Dkt. No. 60 at 2–5; Dkt. No. 59 at 13–15; Dkt. No. 61 at 7–9. For

18  the same reasons stated in its prior discussion (*see supra* § III.A.2.a.ii), the Court finds a dispute

19  of material fact exists as to whether Ms. Zhang can establish a prima facie case using the

20  *McDonnell Douglas* elements.

21       That said, "a plaintiff [need] not rely exclusively on the [*McDonnell Douglas* elements]

22  but [can instead] establish a prima facie case through the submission of [direct] evidence."

23  *Schnidrig*, 80 F.3d at 1409 (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.

24  1985), *amended*, 784 F.2d 1407 (9th Cir. 1986)). When a plaintiff offers direct evidence of

discriminatory intent, "very little such evidence is necessary" to establish a prima facie case. *Id.*; *Weil*, 922 F.3d at 1003 ("[T]he requisite level of proof necessary for a plaintiff to establish a prima facie Title VII case at the summary judgment stage 'is minimal and does not even need to rise to the level of a preponderance of the evidence.'" (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994))). "On summary judgment, direct evidence of discrimination is that which, 'if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Hittle*, 101 F.4th at 1012–13 (alterations in original) (quoting *Coghlan*, 101 F.4th at 1012–13).

Here, Ms. Zhang claims that she began experiencing discriminatory changes to her working conditions immediately after announcing her pregnancy, ultimately leading to her termination shortly after returning from maternity leave but before using all of her available leave benefits as she planned. Dkt. No. 50 at 25. To support her direct-evidence claim, she points to a single communication that she argues indicates that TEA's decision to alter her job responsibilities shortly after announcing her pregnancy was due, at least in part, to a fear that she might not return from maternity leave. Dkt. No. 51 at 155. The Court recognizes that WLAD specifically prohibits decisions based on the negative assumption that "[p]regnant women do not return to the job after childbirth." WAC 162-30-020(3)(c)(i). But TEA disputes the negative interpretation of the communication, arguing that the reorganization decisions described in the communication were made prior to Ms. Zhang's pregnancy announcement and that Ms. Zhang presents excerpts from the allegedly offending document out of context. Dkt. No. 59 at 12. Despite the low threshold of proof at the prima facie stage, the Court finds that there is a dispute of material fact as to whether the single communication in question, when read in context, "proves the fact [of discriminatory animus] without inference or presumption." *Hittle*, 101 F.4th at 1012–13 (alterations in original) (internal quotation marks omitted).

Since Ms. Zhang carries the initial burden of making a prima facie case under the *McDonnell Douglas* framework, these disputes of material fact doom her motion for summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."). The Court therefore DENIES Ms. Zhang's motion as to her intentional gender discrimination claims.

### 3.   Non-Discriminatory Reason

Per the *McDonnell Douglas* framework, despite the factual disputes at the prima facie stage, TEA may still be granted summary judgment dismissal of Ms. Zhang's gender discrimination claim by articulating a legitimate, non-discriminatory reason for any allegedly adverse employment actions.[6] 411 U.S. at 802–03. Here, the cumulative briefing on summary judgment indicates that there is some dispute between the Parties as to what specific actions are being litigated as discriminatory. *See supra* n.5. Regardless, TEA asserts that its employment decisions regarding Ms. Zhang, up to and including her termination, were due to her poor work performance and that Ms. Zhang herself failed to meaningfully engage in open communication or follow established procedures regarding her leave. Dkt. No. 52 at 23–25; Dkt. No. 59 at 16–21. These non-discriminatory explanations are sufficient to shift the burden of proof back to Ms. Zhang to establish that they are merely pretextual and not worthy of credence, or that discriminatory animus was nonetheless a motivating factor. *McGinest*, 360 F.3d at 1123; *Weil*, 922 F.3d at 1002; *Hittle*, 101 F.4th at 1012.

---

[6] Ms. Zhang's race/national origin discrimination claims fail as a matter of law at the prima facie stage on TEA's motion. *See supra* § III.A.2.a. Therefore, the Court need only apply the burden-shifting framework to the remaining gender discrimination claim.

### 4.      Pretext

As previously discussed, in support of its poor work performance argument, TEA presents considerable evidence showing Ms. Zhang's struggles in her role and her supervisors' and coworkers' dissatisfaction with her performance. Dkt. No. 52 at 3–14; Dkt. No. 59 at 13–15. Ms. Zhang presents evidence disputing those claims. Dkt. No. 50 at 24–25; Dkt. No. 60 at 2–5; Dkt. No. 61 at 7–9. More importantly, Ms. Zhang also points to evidence which she argues indicates that TEA's decision making was motivated, at least in part, by improper stereotypes about pregnant employees who take maternity leave. *See, e.g.*, Dkt. No. 51 at 155. She also disputes claims that she failed to follow required procedures for accessing leave benefits. Dkt. No. 50 at 14–15; Dkt. No. 61 at 11–12, 14, 16–17, 20. Ms. Zhang further points to general circumstantial evidence—such as the timing of the relevant decisions and suspect communications in relation to her pregnancy announcement, requests for leave, and return from maternity leave—from which a factfinder could reasonably infer discriminatory motive.

Given these disputes of material fact, the Court finds that summary judgment for either party is inappropriate. The Court is further guided by its responsibility to "zealously guard[] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest*, 360 F.3d at 1112. The Court therefore also DENIES TEA's motion for summary judgment as to Ms. Zhang's intentional gender discrimination claims.

### B.      Hostile Work Environment Claims

Under both Title VII and WLAD, to establish a hostile work environment claim a plaintiff must produce evidence of harassment "so pervasive as to alter the terms and conditions of employment and create an abusive working environment." *Clarke v. State Att'y Gen.'s Off.*, 133 Wn. App. 767, 787, 138 P.3d 144 (2006); *accord Loeffelholz v. Univ. of Wash.*, 175 Wn.2d

264, 275, 285 P.3d 854 (2012) (quoting *Antonius v. King Cnty.*, 153 Wn.2d 256, 260, 103 P.3d 729 (2004)); *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985). "The conduct must be both objectively abusive and subjectively perceived as abusive by the victim." *Clarke*, 133 Wn. App. at 787. TEA argues that Ms. Zhang cannot present any evidence on summary judgment that meets this standard. Dkt. No. 52 at 26–28.

Ms. Zhang fails to present any evidence to raise a dispute of material fact as to whether she was subjected to an objectively abusive work environment. Her arguments in opposition to summary judgment simply reiterate her subjective belief that she experienced disparate treatment because of her gender, race, and national origin without any record citations. Dkt. No. 61 at 29–30. Further, and more importantly, Ms. Zhang fails to point to any specific evidence of the type of objectively abusive behavior required to establish a hostile environment claim.

The Court therefore GRANTS TEA's motion for summary judgment and DISMISSES Ms. Zhang's hostile work environment claims.

## C.     Statutory Retaliation Claim

Defendant argues that Ms. Zhang's statutory claim fails because the statutory provision referenced in her Complaint—the "Washington Family Leave Act, RCW 49.78 *et seq.*" (Dkt. No. 1-1 at 15)—was repealed without a savings clause. Dkt. No. 52 at 30–32 (citing *Hansen v. W. Coast Wholesale Drug Co.*, 47 Wn.2d 825, 827, 289 P.2d 718 (1955)). Ms. Zhang does not dispute that the WFLA was abrogated without a savings clause. Dkt. No. 61 at 32. Neither party is correct, as the Washington Paid Family and Medial Leave Act, which abrogated the WFLA, does in fact include a savings clause. *See* RCW 50A.05.125 ("The provisions of chapter 49.78 RCW as they existed prior to January 1, 2020, . . . including but not limited to the enforcement provisions . . . . [and] cause[s] of action for conduct, acts, or omissions occurring on or before December 31, 2019, under chapter 49.78 RCW remain[] available."); *see also Dahlstrom v. Life*

1    *Care Ctrs. of Am., Inc.*, No. C21-01465, 2023 WL 4893491, at *5 n.5 (W.D. Wash. Aug. 1,

2    2023). The allegedly retaliatory acts at issue in this case occurred prior to and in relation to the

3    termination of Ms. Zhang's employment in August 2019. Dkt. No. 1-1 ¶¶ 4.50–4.54, 4.59, 4.60;

4    14.1–14.9. Although the Court makes no determination as to any potential statute of limitations

5    issues, it appears Ms. Zhang's retaliation claim may properly be brought under the WFLA.

6           Ms. Zhang argues that she presents sufficient evidence to survive summary judgment on

7    her retaliation claim.[7] Specifically, she notes that she informed her supervisors as early as July

8    2019 that she intended to use additional leave benefits to which she was entitled sometime later

9    that year.[8] Dkt. No. 61 at 32. She was then terminated, only a month later, before she was able to

10   utilize her additional leave benefits. *Id.* TEA does not refute that it was aware of her intent to

11   take additional leave, or the timing of events as presented by Ms. Zhang's evidence. Instead,

12   TEA essentially argues only that "Zhang never actually requested leave that she was denied."

13   Dkt. No. 52 at 31. But that is not required to prove her retaliation claim. Instead, she need only

14   show that her taking of leave, or intent to take available leave, "was used as a negative factor in

15   her discharge." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1131 (9th Cir. 2001); *Mesmer*

16

17   ───────────────

18   [7] The Court recognizes that she makes these arguments in relation to her assertion that her "scrivener's error" was
     excusable because her claim could have been raised under either the federal Family Medical Leave Act or the
     Washington Paid Family and Medical Leave Act. Dkt. No. 61 at 31–33.

19   [8] In her opposition briefing, Ms. Zhang also challenges her alleged demotion that occurred around the time she
     announced her pregnancy and intention to take maternity leave, and other reorganization activity that occurred

20   during her leave, as retaliatory under the WFLA. Dkt. No. 61 at 31. But in her Complaint, Ms. Zhang alleges only
     retaliatory termination in relation to her notice of intent to take additional leave in July 2019. *See* Dkt. No. 1-1

21   ¶¶ 14.1–14.9. The Ninth Circuit has repeatedly held that, except in limited circumstances not argued or briefed here,
     it is inappropriate for a plaintiff to attempt to amend a complaint in opposition to summary judgment. *Coleman v.
     Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435

22   F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out
     inadequate pleadings." (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990))); *La Asociacion
     de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("[A party] may not

23   effectively amend its Complaint by raising a new theory . . . in its response to a motion for summary judgment.").
     Therefore, while her claims regarding her earlier leave may circumstantially support her general gender

24   discrimination claims, they cannot be used as a basis for her WFLA retaliation claim.

*v. Charter Commc'ns, Inc.*, No. C14-5915, 2015 WL 3649287, at *4 (W.D. Wash. June 11, 2015) (finding that it was sufficient for plaintiff to show that he "provide[d] notice of an intent to take leave" to raise a dispute of fact on his FMLA retaliation claim even though he was fired prior to completing the requirements to access available leave); *see also Moore v. Lowe's Home Ctrs., LLC*, No. C14-1459, 2016 WL 3960025, at *8 (W.D. Wash. July 22, 2016) ("[T]he WFLA mirrors its federal counterpart and provides that courts are to construe its provisions in a manner consistent with similar provisions of the FMLA." (quoting *Washburn v. Gymboree Retail Stores, Inc.*, No. C11-822, 2012 WL 5360978, at *7 (W.D. Wash. Oct. 30, 2012))). As noted by Ms. Zhang, for retaliation claims "causation may be established based on the timing of the relevant actions." *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000).

Consequently, the Court finds that there are disputes of material fact and Denies TEA's motion for summary judgment as to Ms. Zhang's WFLA retaliation claim.

**D.   Affirmative Defenses**

Ms. Zhang asks the Court to strike all 12 of the affirmative defenses asserted by TEA in it Answer to her Complaint. Dkt. No. 50 at 30–32. Plaintiff does not state any specific legal grounds upon which she bases her request to "strike" the defenses. Instead, she simply argues that TEA's assertions in its Answer "appear to be in the form of a stock pleading, not specifically tailored to the facts of this case." *Id.* at 30. The Court does not recognize such an argument as sufficient grounds alone, and Ms. Zhang cites to no legal authority to justify her argument.[9]

---

[9] To the extent Ms. Zhang intended to move to strike the defenses per Fed. R. Civ. P. 12(f), the Court finds such a request would fail on the merits. "Motions to strike are generally disfavored." *Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas Corp.*, 932 F.2d 972 (9th Cir. 1991) (citing *Stabilisierundfonds Fur Wein v. Kaiser*, 647 F.2d 200, 201 (D.C. Cir. 1981)). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff *fair notice* of the defense." *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019) (emphasis added) (quoting *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1023 (9th Cir. 2010), *abrogated on other grounds by*

Nonetheless, as the request is included in her motion for partial summary judgment, the Court will apply the appropriate summary judgment standard.

Ms. Zhang's only claims that survive summary judgment are her intentional gender discrimination claim and WFLA retaliation claim. Since TEA will bear the burden of proof for any of its affirmative defenses against these specific claims at trial, TEA can survive summary judgment by presenting evidence that raises a genuine issue of material fact for each of its twelve asserted affirmative defenses. *Stefanchik*, 559 F.3d at 929–30.

### 1.       Failure to State a Claim

TEA does not respond to Ms. Zhang's challenge to this affirmative defense. Courts in this district generally find that "[f]ailure to state a claim is not a proper affirmative defense." *LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 818 (N.D. Cal. 2019) (quoting *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1174 (N.D. Cal. 2010)); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense."); *Satanic Temple, Inc. v. City of Scottsdale*, 423 F. Supp. 3d 766, 778 (D. Ariz. 2019) (collecting cases with similar holdings). The Court therefore GRANTS Ms. Zhang's motion as to TEA's first affirmative defense.

### 2.       Legitimate, Non-Discriminatory Employment Actions

Ms. Zhang argues, without authority, that this is not a legally applicable affirmative defense but is simply a denial of her allegations. Dkt. No. 50 at 31. The Court has already found that TEA has raised a dispute of material fact on summary judgment as to the legitimacy of TEA's non-discriminatory reasons for the employment actions relevant to Ms. Zhang's surviving

---

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)). Here, Ms. Zhang did not assert that the affirmative defenses failed to provide her with fair notice of the defenses.

gender discrimination claim.[10] *See supra* § III.A.3. The Court therefore DENIES Ms. Zhang's motion as to this affirmative defense for similar reasons.

### 3. *Fargher-Ellerth* Defense

The Parties agree that this affirmative defense is only applicable for hostile work environment claims. Dkt. No. 50 at 31; Dkt. No. 59 at 22. Ms. Zhang's hostile work environment claims do not survive summary judgment. *See supra* § III.B. The Court therefore DENIES as MOOT Ms. Zhang's motion as to this defense.

### 4. Unclean Hands Defense

Ms. Zhang argues that there is no evidence to support this defense. Dkt. No. 50 at 31. In turn, TEA points to specific evidence in support of its defense in relation to Ms. Zhang's claims of discrimination. Dkt. No. 59 at 22–23. TEA raises a sufficient dispute of material fact to survive summary judgment. *See supra* n.10. The Court therefore DENIES Ms. Zhang's motion as to this defense.

### 5. Plaintiff's Acts or Omissions

Ms. Zhang argues that there is no evidence to support this defense. Dkt. No. 50 at 31. TEA argues that it has produced evidence that the employment actions Ms. Zhang claims were discriminatory were in fact taken in response to Ms. Zhang's own acts or omissions. Dkt. No. 59 at 23. TEA raises a sufficient dispute of material fact to survive summary judgment. *See supra* n.10. The Court therefore DENIES Ms. Zhang's motion as to this defense.

---

[10] As with this defense, TEA's opposition to the dismissal of several of its other affirmative defenses overlaps with its general arguments that it had legitimate, non-discriminatory justifications for its employment actions. *See infra* §§ III.D.4, 5, 7. While these defenses survive to allow TEA to present evidence regarding its non-discriminatory justifications at trial, Ms. Zhang may still be able to meet her ultimate burden at trial of convincing the factfinder that TEA's justifications are pretextual or its decisions were nonetheless sufficiently motivated by discriminatory or retaliatory animus as to warrant liability.

1

### 6.      Failure to Mitigate Damages

2          Ms. Zhang appears to argue, again without specific authority, that this defense fails

3   because TEA has not disclosed expert opinion on the issue or specific evidence identifying

4   suitable positions that might have been available to Ms. Zhang after her termination. Dkt. No. 50

5   at 31. While TEA will bear the burden at trial to prove this defense, Ms. Zhang carries the

6   ultimate burden of proving her damages, which includes showing that she met her inherent "duty

7   to 'use reasonable diligence in finding other suitable employment.'" *Erickson v. Biogen, Inc.*,

8   417 F. Supp. 3d 1369, 1386 (W.D. Wash. 2019) (quoting *Odima v. Westin Tucson Hotel*, 53 F.3d

9   1484, 1497 (9th Cir. 1995)). Thus, "to support her summary judgment motion to dismiss this

10  affirmative defense, *Plaintiff* has the burden to show that no reasonable jury could find: '(1) that

11  the damage suffered by [Plaintiff] could have been avoided, *i.e.*, that there were suitable

12  positions available which [Plaintiff] could have discovered and for which he was qualified; and

13  (2) that [Plaintiff] failed to use reasonable care and diligence in seeking such a position.'" *Id.*

14  (quoting *Odima*, 53 F.3d at 1497). Other than addressing Ms. Zhang's cursory challenges to this

15  affirmative defense, neither Party has briefed the issue of damages. Because damages issues are

16  generally highly fact-specific, the Court cannot find on the record before it that either Party has

17  met its burden on summary judgment as a matter of law. The Court therefore DENIES Ms.

18  Zhang's motion as to this defense.

19

### 7.      Good Faith

20          Ms. Zhang appears to argue that TEA's pleading of this defense is sufficiently deficient

21  to warrant dismissal. Dkt. No. 50. Because she waited to raise this argument at the summary

22  judgment stage, Ms. Zhang is required to make a factual showing that the defense cannot apply

23  as a matter of law. TEA argues that it has presented evidence showing that its employment

24  actions were made in good faith, which it claims would be sufficient to defeat Ms. Zhang's

allegations that it acted discriminatorily. Dkt. No. 59 at 24. TEA raises a sufficient dispute of material fact to survive summary judgment. *See supra* n.10. The Court therefore DENIES Ms. Zhang's motion as to this defense.

### 8.    Frivolous Claim

Ms. Zhang argues that TEA cannot show that any of her claims are frivolous. Dkt. No. 50 at 32. TEA's only argument in opposition is that her gender discrimination claim is frivolous to the extent it relies on proof that her job responsibilities were reassigned after she announced her pregnancy. Dkt. No. 59 at 24. While the evidence presented by TEA raises a dispute of fact as to the timing of its reassignment decision, this dispute is not sufficiently material on its own to render Ms. Zhang's gender discrimination claim frivolous as a matter of law. *See Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1109 (C.D. Cal. 2010) ("A 'material' fact is one that could affect the outcome of the case under the governing substantive law." (citing *Anderson*, 477 U.S. at 248)). The Court therefore GRANTS Ms. Zhang's motion as to this defense.

### 9.    Statute of Limitations

The Parties agree that a three-year statute of limitations applies to Ms. Zhang's WLAD claims.[11] Dkt. No. 50 at 32; Dkt. No. 59 at 24. Ms. Zhang argues that the defense fails as a matter of law because she was terminated in 2019, within the limitations period since she filed her Complaint in 2022. Dkt. No. 50 at 32. In response, TEA notes that Ms. Zhang has assigned discriminatory intent to several other alleged employment actions, some of which appear from the evidence to have occurred outside of the limitations period. Dkt. No. 59 at 24. As the Court does not reach the legal sufficiency of Ms. Zhang's expanded adverse employment action allegations in resolving these motions (*see supra* n.5), the Court finds that TEA raises a dispute

---

[11] The Parties do not address the statute of limitations for any other claims in the briefing on summary judgment.

1    of material fact as to whether the statute of limitations bars liability for any alleged

2    discriminatory acts besides Ms. Zhang's termination.

3    　　　Ms. Zhang appears to argue that the continuing violation doctrine would nonetheless save

4    her claims based on the other alleged adverse actions. Dkt. No. 60 at 13–14. Unfortunately, Ms.

5    Zhang raises these arguments for the first time in her reply briefing. As a general rule, arguments

6    must be contained in the moving papers and may not be raised for the first time in a reply brief.

7    *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d

8    1039 , 1048 (9th Cir. 2003) (affirming district court after it declined to consider an argument

9    raised for the first time in reply)). Therefore, the Court will not consider this new argument.

10   Accordingly, the Court DENIES Ms. Zhang's motion as to this defense.

11   　　　**10.    Non-Existent Statute**

12   　　　Ms. Zhang argues that all of her claims arise under existing statutes. Dkt. No. 50 at 32.

13   TEA argues that this defense relates only to Ms. Zhang's WFLA claim and reiterates its

14   arguments regarding that claim. Dkt. No. 59 at 24. The Court has already addressed TEA's

15   arguments as to the WFLA. *See supra* § III.C. The Court therefore GRANTS Ms. Zhang's motion

16   as to this defense.[12]

17   　　　**11.    After-Acquired Evidence**

18   　　　Ms. Zhang argues that there is no evidence to support this defense. Dkt. No. 50 at 32. In

19   response, TEA points to specific evidence in support of its defense regarding alleged fabrications

20   on Ms. Zhang's resume. Dkt. No. 59 at 23, 25; Dkt. No. 52 at 3. TEA raises a sufficient dispute

---

[12] Ms. Zhang also requests denial of fees and costs related to this claim. Dkt. No. 50 at 32. TEA does not move for fees and costs in conjunction with either its affirmative motion on this claim or its opposition to dismissal of the defense. As the WFLA claim survives summary judgment, the Court will not address the fees and costs issue in this Order.

of material fact to survive summary judgment. The Court therefore DENIES Ms. Zhang's motion as to this defense.

### 12.     Laches and Equitable Estoppel

TEA withdraws its laches defense. The Court therefore DISMISSES this defense.

Ms. Zhang argues that TEA cannot prove its estoppel defense. Dkt. No. 50 at 32. TEA argues that its defense relates to Ms. Zhang's claims that it discriminated against her prior to the termination of her employment. Dkt. No. 59 at 25. As the Court has previously noted, the Parties have not sufficiently briefed the scope of the adverse employment actions at issue in relation to Ms. Zhang's surviving discrimination or retaliation claims. *See supra* n.5. Since such a determination would require a fact-specific inquiry, the Court cannot find on the record before it that either Party has met its burden on summary judgment as a matter of law. The Court therefore DENIES Ms. Zhang's motion as to this defense.

## IV.     CONCLUSION

Consequently, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 50) and GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment (Dkt. No. 52).

The Court further ORDERS:

(1)     Plaintiff's first, seventh, ninth, and eleventh causes of action[13] for intentional gender discrimination and WFLA retaliation survive summary judgment,

(2)     Plaintiff's second, third, fourth, fifth, sixth, and eighth causes of action are DISMISSED.

---

[13] *See supra* n.1.

(3)     Defendant's failure-to-state-a-claim, frivolous-claim, *Fargher-Ellerth*, non-existent statute, and laches affirmative defenses are DISMISSED. Defendant's remaining affirmative defenses survive summary judgment.

(4)     The Parties are DIRECTED to meet and confer and SHALL FILE a joint status report within **thirty (30) days** of the date of this Order. The joint status report must include:

    (a)     a proposed amended trial schedule, and

    (b)     any dates on which trial counsel may have conflicts or other complications through November 2025 to be considered in setting a new trial date.

Dated this 21st day of June 2024.

Tana Lin
United States District Judge